UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES L. MINNER,

                              Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    18-CV-1086S

NAVIENT CORPORATION and
NAVIENT SOLUTIONS, LLC,

                              Defendants.

## I.      Introduction

Before this Court is Plaintiff's class action alleging Defendants violated New York General Business Law § 349, the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2, and breached a contract in the servicing of his (and similarly situated person's) student loans. Defendants moved to dismiss the initial version of the Complaint (Docket No. 6) and Minner cross-moved for leave to amend (Docket No. 10). This Court granted leave to amend while denying the Motion to Dismiss, <u>Minner v. Navient Corporation</u>, No. 18CV1086, 2020 WL 906628 (W.D.N.Y. Feb. 25, 2020) (Docket No. 13); familiarity with that Decision is presumed.

Presently before this Court is Defendants' Motion for Summary Judgment (Docket No. 73) dismissing the Third Amended Complaint (Docket No. 38). Prior to moving for summary judgment, Defendants Navient Solutions, LLC (or "NSL") and Navient Corporation ("Navient Corp.") moved to strike (Docket No. 72) Plaintiff's expert report and testimony from Diane Sovereign (<u>see</u> Docket No. 71). This Court granted (Docket No. 87) the Motion to Strike (Docket No. 72) and now addresses Defendants' Motion for Summary Judgment (Docket No. 73).

For reasons stated below, this Summary Judgment Motion (Docket No. 73) is granted and the action is dismissed.

## II.      Background

### A.  Parties

James Minner is a federal student loan borrower with nine loans from the United States Department of Education ("DOE") serviced first by Defendants' predecessor, Sallie Mae, and later by Defendants (Docket No. 38, 3d Am. Compl. ¶¶ 1, 27, 30-61, 63-64, 169, Ex. B).

Minner alleges a class of similarly situated "direct student loan borrowers from the federal government who had at least one federal loan serviced by Defendants and/or any of their predecessors between January 1, 2010 and the present that were reported to any credit reporting agency (or 'CRA') as delinquent or in default within thirty (30) days after a forbearance" (id. ¶ 23).

Navient Corp.[1] and NSL succeeded Sallie Mae as the federal student loan servicers (id. ¶¶ 2, 8, 10, 13, 14, 58-62).   As loan servicers, Minner alleges that Defendants are responsible for "managing borrower's accounts, processing monthly payments, assisting borrowers to learn about, enroll in, and remain in alternative repayment plans" (id. ¶ 65).

### B.  Prior Proceedings

On September 13, 2018, Plaintiff James Minner sued Defendants in New York State Supreme Court (Docket No. 1, Notice of Removal, Ex. A).   On October 4, 2018, Defendants removed the case to this Court (Docket No. 1).   As noted above, Defendants

---

[1] Navient Corp. is a holding company and does not engage in loan servicing, Docket No. 72, Defs. Memo. at 1 n.1.

then moved to dismiss (Docket No. 6) and Plaintiff cross-moved for leave to amend (Docket No. 10).  On February 25, 2020, this Court granted the Cross-Motion and denied the Motion to Dismiss, <u>Minner</u>, <u>supra</u>, 2020 WL 906628 (Docket No. 13).  Plaintiff then amended the Complaint (Docket No. 14) and Defendants answered (Docket No. 17).  On July 10, 2020, Plaintiff amended the Complaint again (Docket No. 31, 2d Am. Compl.) and again on August 27, 2020 (Docket No. 38, 3d Am. Compl.).

C.  Third Amended Complaint (Docket No. 38)

After taking out these student loans, Minner experienced long-term financial problems (Docket No. 38, 3d Am. Compl. ¶ 77).  Defendants offered options for relief including income-driven repayment plans (or "IDR") and forbearance (<u>id.</u> ¶ 69).  Minner contends that Defendants inappropriately placed his loans in forbearance rather than IDR.

Forbearance gives further time to repay an obligation or an agreement not to enforce a claim at its due date, <u>Black's Law Dictionary</u> 644 (6th ed. 1990) (<u>see also</u> Docket No. 81, Pl. Aff. ¶ 3).  Borrowers in forbearance accrue unpaid interest and the addition of that unpaid interest to the principal of the loans and increasing the monthly payment (Docket No. 38, 3d Am. Compl. ¶¶ 81, 82, 106).  It is the refinancing of the loan, Minner explains, is "typically not suitable for borrowers experiencing financial hardship or distress that is not temporary or short-term" (<u>id.</u> ¶ 80).  Minner claims that borrowers in forbearance face "significant costs, which generally increase the longer the borrower is in forbearance" with accumulated unpaid interest and the addition of this interest to the underlying principal (<u>id.</u> ¶¶ 81-83).  According to Defendants' own website, forbearance was best for debtors experiencing only temporary financial distress (<u>id.</u> ¶¶ 78-80).

IDR plans, however, are usually a better option for borrowers (like Minner) facing long-term financial hardship by avoiding the additional costs associated with forbearance (id. ¶ 84).

Forbearance, however, was easier for Defendants to administer (id. ¶¶ 89-99). Minner asserts Defendants also incentivized their customer-service representatives to push distressed borrowers into forbearance without exploring IDR plans (id. ¶ 89).

Nevertheless, while Minner endured long-term hardship, Defendants told him that his loans should be placed in forbearance (id. ¶¶ 85, 77, 104) and Defendants then placed his loans (and those of similarly situated class members) in forbearance (id. ¶ 88). These borrowers experienced negative consequences from this assignment (id. ¶ 107).

Forbearance, however, caused two major problems for Minner. First, he incurred additional costs with his loans. After being in forbearance status for some time, Minner switched to an IDR plan, but during the forbearance period interest accrued and was added to the principal balance of his loans (id. ¶ 106).

Second, Minner believed his credit reports contained errors about the status of these loans. Defendants told these borrowers that while their loans were in forbearance no default would occur but Minner alleges that upon removing these loans from forbearance Defendants misreported to consumer reporting agencies (or "CRAs") defaults by these borrowers on their loans (id. ¶ 110). From these reports it appeared that these loans were never in forbearance and that Minner and class members had defaulted by failing to make payments during the forbearance period (id. ¶¶ 111, 114).

Upon learning of these reports, Minner complained to the CRAs (id. ¶ 163). Minner alleges the CRAs informed Defendants that Minner disputed their reports (id. ¶ 164).

4

Defendants failed to correct the reports stating that Minner had defaulted on his loans (id. ¶ 165).

Meanwhile, Minner was working to pay off debt and improve his credit score before and during the forbearance period (id. ¶¶ 118-19).  During the forbearance period, Minner improved his credit score by 100 points (id. ¶ 119).  This enabled him to qualify for a mortgage to refinance his home (id. ¶¶ 118-20).

Credit reports indicated that Minner defaulted on his loans while they were in forbearance (id. ¶¶ 125-26).  But after Defendants incorrectly reported that Minner had defaulted, Minner's credit score fell approximately 120 points, and he was informed that he no longer qualified to refinance his mortgage (id. ¶¶ 124-25).  Since Defendants' incorrect reports, Minner has not been able to receive alternative financing for his mortgage (id. ¶ 126).  In addition, Minner's other lenders canceled several credit lines (id. ¶¶ 127-18).

Minner references actions by the Consumer Financial Protection Bureau and Attorneys General of four states that also accuse Defendants of steering other long-term hardship borrowers to forbearance and misrepresenting the status of their loans to CRAs (id. ¶¶ 86-87, 115-16, Ex. A).

        D.  Causes of Action Alleged

The First Cause of Action in the Third Amended Complaint alleges for Minner and a subclass of New York borrowers that Defendants violated New York General Business Law § 349 (Docket No. 38, 3d Am. Compl. ¶¶ 143-53).  Minner claims that he and the proposed New York subclass reasonably relied upon Defendants' assistance but Defendants steered them to forbearance against subclass members' best interest (id.

¶¶ 144-47).   Minner contends that Defendants failed to perform "their core duties in servicing" his loans by steering him (and those similarly situated) inappropriately into forbearance (id. ¶¶ 72, 77).

The Second Cause of Action alleges Defendants knowingly and willfully introduced false information in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2, against the proposed class by misrepresenting the status of their loans while in forbearance (id. ¶¶ 155-67).

The Third Cause of Action alleges Defendants breached the Master Promissory Notes Minner and class members entered with the DOE (id. ¶¶ 169-85).   Defendants breached the promissory notes and breach their duty of good faith by steering Minner and class members to forbearance and not to IDR plans (id. ¶¶ 175-83) and falsely reporting student loan delinquency to CRAs (id. ¶ 189).

Minner seeks compensatory and punitive damages, a declaration that Defendants had a contractual responsibility to provide borrowers such as Minner and the proposed class with assistance in understanding and choosing appropriate repayment plans, and an Order compelling Defendants to rescind their reports of default to the credit reporting agencies (id. ¶ 192, Prayer for Relief).

Defendants answered this Third Amended Complaint (Docket No. 40).

    E.  Defendants' Motion for Summary Judgment (Docket No. 73)

Defendants then moved for summary judgment (Docket No. 73[2]).   Responses were due by February 2, 2023, and reply by February 26, 2023 (Docket No. 76), and the parties made timely responses (Docket Nos. 81, 82).

---

[2]In support of their Motion, Defendants submit their Statement, an Appendix of Declarations with exhibits in support of the Motion, and Memorandum of Law, Docket No. 73; the redacted version of exhibits,

### III.   Discussion

A.  Applicable Standards

1.  Summary Judgment and Choice of Law

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed. R. Civ. P. 56(c)(1)) to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a Motion for Summary Judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addicks v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The

---

Docket No. 84 (see also Docket No. 86, original unredacted exhibits filed under seal); and Reply Memorandum, Docket No. 82.

In opposition, Plaintiff submits his Memorandum of Law, Plaintiff's Attorney's Affidavit with exhibits, and Plaintiff's own Affidavit with exhibits, Docket No. 81.

Defendants also moved to seal certain exhibits filed with their Motion for Summary Judgment, Docket No. 74.  This Court granted in part that Motion to Seal, ordering Defendants to file Exhibits B-L publicly but with personal identifying information redacted, Docket No. 83; see also Docket Nos. 84 (redacted version of Exs. B-L), 86 (unredacted copies of Exs. B-L retained by the Court Clerk), see Fed. R. Civ. P. 5.2.

function of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial," Anderson, supra, 477 U.S. at 249.  "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, Anderson, supra, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party, Anderson, supra, 477 U.S. at 252.

This Court's Local Civil Rules require that movant submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," W.D.N.Y. Loc. Civ. R. 56(a)(1), and the opponent to submit a response to each numbered paragraph in the movant's statement, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.

In diversity cases like this case, federal court applies substantive law of the jurisdiction where the Court sits, here of New York, see Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); see Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (including state's choice of law regime).  Under

8

New York choice of law rules, "the first step in any case presenting a potential choice of law is to determine whether there is an actual conflict between the laws of the jurisdiction involved." Matter of Allstate Ins. Co., 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905 (1993). Applying this choice of law regime, New York substantive law applies because no party has suggested another jurisdiction's law applies and one claim arises under New York General Business Law (Docket No. 38, 3d Am. Compl. ¶¶ 143-53).

### 2.   New York General Business Law

Section 349 of the General Business Law outlaws "deceptive act or practices in the conduct of any business," N.Y. Gen. Bus. L. § 349(a).   As previously observed, Minner, supra, 2020 WL 906628, at *11 (Docket No. 13, Decision at 22), to state a claim for violation of § 349, a plaintiff must allege (a) that the challenged act or practice was consumer-oriented; (b) that it was misleading in a material way; and (c) that the plaintiff suffered injury as a result of the deceptive act, Genna v. Sallie Mae, Inc., No. 11 CIV 7371 LBS, 2012 WL 1339482, at *7 (S.D.N.Y. Apr. 17, 2012).

### 3.   Fair Credit Reporting Act

Providing false credit information violates the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2.  Plaintiff alleges a violation of that Act by claiming that Defendants received notice of a credit dispute from a credit reporting agency and Defendants thereafter acted in willful or negligent noncompliance with the statute, Cummins v. Select Portfolio Serv'g, Inc., No. 14 CV 5121 (MKB)(LB), 2016 WL 11395016, at *5 (E.D.N.Y. Aug. 23, 2016), report and recommendation adopted, 2016 WL 4766237 (E.D.N.Y. Sept. 13, 2016) (Docket No. 13, Decision at 25); Minner, supra, 2020 WL 906628, at *12 (Docket No. 13, Decision at 25).

Section 1681s-2 imposes two distinct responsibilities upon furnishers of credit information:  the duty to provide accurate information, 15 U.S.C. § 1681s-2(a), and the duty to investigate disputed furnished information and modify or delete inaccurate or incomplete information that arises upon notice from the CRA of a dispute, id. § 1681s-2(b)(1); see id. § 1681i(a)(2).  The former prohibits the furnisher from reporting inaccurate information to a CRA if the furnisher "has actual knowledge" (or consciously avoids knowing)" is inaccurate, Arnold v. Navient Sols., LLC, No. 1:17CV1277, 2018 WL 6671542, at *3 (N.D.N.Y. Dec. 19, 2018) (Docket No. 73, Defs. Memo. at 10).  However, there is no private right of action under § 1681s-2(a), Arnold, supra, 2018 WL 6671542, at *3 (citing cases) (id.); 15 U.S.C. § 1681s-2(d).

Meanwhile, § 1681s-2(b) has a private right of action, Arnold, supra, 2018 WL 6671542, at *3.  To state a claim under § 1681s-2(b), "plaintiff must allege that '(1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in "willful or negligent noncompliance with the statute,"'" Arnold, supra, 2018 WL 6671542, at *3 (quotations omitted)) (see id. at 11).

### 4.  Breach of Contract and Duty of Good Faith and Fair Dealing

Breach of contract under New York law requires the existence of a contract with Defendant, performance of Plaintiff's obligations under the contract, breach of the contract by Defendant, and damages incurred therefrom, e.g., Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011) (citing cases).

Regarding the duty of good faith and fair dealing, Plaintiff may succeed on this claim if he can "'establish[] a legal duty separate and apart from contractual duties,'" Schonfeld v. Wells Fargo Bank, N.A., as Trustee for Aegis Asset Back Secs. Trust

10

Mortgage Pass-Through Certs., No. 1:15-cv-01425, 2017 WL 4326057, at *5 (N.D.N.Y. Sept. 27, 2017) (quoting Washington v. Kellwood Co., No. 05 Civ. 10034, 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009)).

"To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must establish the following:  '(1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages,'" Schonfeld, supra, 2017 WL 4326057, at *5 (quoting Washington v. Kellwood Co., supra, 2009 WL 855652, at *6); see Minner, supra, 2020 WL 906628, at *14 (Docket No. 13, Decision at 26) (see Docket No. 81, Pl. Memo. at 5).

B.  Parties' Contentions

Defendants argue that Minner was advised of the option of IDR in 2013 but waited until five years later to seek relief (Docket No. 73, Defs. Memo. at 5-6).  Minner conceded this in his deposition (id. at 6; Docket No. 73, Defs. Statement ¶ 22).  Minner, in fact, sought forbearance rather than IDR four times from 2013 (Docket No. 73, Defs. Memo. at 6; Docket No. 73, Defs. Statement ¶¶ 28-29).  They conclude that Minner's argument that Defendants steered Minner to forbearance lacks merit (Docket No. 73, Defs. Memo. at 6).

Defendants next deny proof of a contract existing between Minner and Defendants for a breach of contract claim (id. at 7-9).  Without a contract, Defendants also argue that there can be no breach of the implied duty of good faith (id. at 9, citing, e.g., Keefe v. New York Law School, 71 A.D.3d 569, 570, 870 N.Y.S.2d 94, 95 (1st Dep't 2010)).

Next, Defendants contend that NSL was entitled to summary judgment dismissing the General Business Law § 349 violations (id. at 9-10) as well as Fair Credit Reporting Act violations (id. at 10-12), claiming that there is no evidence that NSL received a credit dispute from a CRA (id. at 11-12).  Since Minner's Fair Credit Reporting Act claims appear to arise under 15 U.S.C. § 1681s-2(a), Defendants argue that there is no private right of action under that statute (id. at 10-11 (citing cases)).  Further, that Act preempts state laws reaching such conduct (Docket No. 82, Defs. Reply Memo. at 2-3).  They alternatively argue that Minner does not have a claim under § 1681s-2(b) because there was no evidence that NSL received notice of a credit dispute from a CRA (Docket No. 73, Defs. Memo. at 11).

Defendants point out that NSL accurately reported Minner's student loan delinquency in May 2018 (Docket No. 73, Defs. Statement ¶¶ 31-32; Docket No. 73, Defs. Memo. at 12).  On June 11, 2018, Minner complained to NSL and disputed the accuracy of its credit reporting (Docket No. 73, Defs. Statement ¶ 33).  After investigating Minner's account, NSL concluded that it did not report inaccurate information, but Minner denies receiving NSL's letter so NSL later sent that information to him (id. ¶¶ 34-35).  NSL's account record did not contain an Automated Credit Dispute Verification form from CRAs if Minner had communicated a dispute to them about his credit reports (id. ¶ 36; Docket No. 73, Decl. of NSL Senior Accounts Analyst Michelle Iorio ¶ 4).

Defendants next argue that Minner lacks standing for declaratory relief (Docket No. 73, Defs. Memo. at 12-14).  Defendants conclude that because no underlying claim supports Minner's purported declaratory judgment claim, Defendants are entitled to

summary judgment in their favor (id. at 14).  Minner has not addressed his entitlement to declaratory relief.

Minner retorts that this Court found evidence Defendants performed DOE loan servicing duties, hence the functional equivalent of privity between Minner and Defendants (Docket No. 81, Pl. Memo. at 2, 4-5), see Minner, supra, 2020 WL 96628, at *13-14 (Docket No. 13, Decision at 28), with this Decision as law of the case (Docket No. 81, Pl. Memo. at 2-7).  He next raises material questions of fact precluding summary judgment for dismissing the Third Cause of Action (id. at 7-10).  Minner cites material questions as to how NSL reported the status of Minner's account, the safeguards for NSL to prevent erroneous transmission, NSL's procedures for correction, and whether the reporting error caused Minner to be denied a mortgage (id. at 9-10).  Minner, however, does not present any evidence on these questions (see Docket No. 82, Defs. Reply Memo. at 3-4).

Defendants reply that Plaintiff's steering claim is baseless and should be deemed abandoned since Plaintiff has not responded to their arguments for its dismissal (id. at 1-2).  They claim Plaintiff also abandoned his Fair Credit Reporting Act claim and that claim fails as matter of law (id. at 2 n.2).  Defendants next observe that Minner did not respond to their Statement of Undisputed Material Facts or submit his own version the facts; thus, Defendants' Statement should be accepted as true (id. at 3).

Alternatively, Defendants assert Minner has not established an issue of fact precluding summary judgment to Defendants (id. at 4).  Minner did not complete the IDR application and not make payments in February to May 2018, thus NSL accurately reported Minner as delinquent (id.).  Defendants then issued their forbearance telling

Minner that his payments would resume on October 2, 2018 (id.).  They point out that Minner has not identified any obligation in the loan contract regarding credit reporting (id. at 5).

### C.  Plaintiff Does Not Contest Defendants' Facts

First, under this Court's Local Civil Rule 56(a)(2), where the opponent to a Summary Judgment Motion fails to respond to movants' proffered Statement of Facts the asserted facts therein may be deemed admitted, id.  Minner now argues that certain issues of fact exist (Docket No. 81, Pl. Memo. at 9-10) but he did not submit a response to Defendants' Statement.  Furthermore, Minner only submitted his affidavit (Docket No. 81) to contradict Defendants' assertions where Defendants' Statement cites to declarations, exhibits, and Minner's deposition testimony as evidence for the assertions (see Docket No. 73).  Minner's affidavit discusses June 2018 credit reports and his disputes (Docket No. 73, Minner Aff. ¶¶ 4-16).

Facts asserted in an uncontested Statement of Facts containing citations to admissible evidence in support of the Motion for Summary Judgment may be deemed admitted, Corcoran v. Boston Scientific, No. 20CV603, 2022 WL 4754840, at *7 (W.D.N.Y. Feb. 16, 2022) (Skretny, J.); Empire Pipeline, Inc. v. Town of Pendleton, 472 F. Supp. 3d 25, 41 (W.D.N.Y. 2020) (Skretny, J.) (facts deemed admitted where opponent fails to submit opposing statement but asserts opposing facts only in memorandum of law and attached exhibits).

According to Defendants, Minner agreed to apply for IDR plan and NSL placed his accounts on administrative forbearance (Docket No. 73, Defs. Statement ¶ 23; see Docket No. 81, Pl. Aff. ¶ 6).  That period of forbearance ended on February 2, 2018, and

Minner's loan payments would resume unless he completed the IDR application (Docket No. 73, Defs. Statement ¶ 31).  Minner, however, did not resume payments (id. ¶ 32). NSL then reported Minner's loans to CRAs as delinquent (id.).  On June 4, 2018, NSL contacted Minner because he was past due on his student loans since February 2, 2018, resumption of payments (id. ¶ 21; see Docket No. 81, Pl. Aff. ¶ 4).

Minner cites this June 4th conversation as the first time he learned of IDR and the offer of administrative forbearance through October 2, 2018 (Docket No. 81, Pl. Aff. ¶¶ 4-6).  He claims that he was told on that date by a NSL representative that forbearance would cover overdue payments, capitalize unpaid interest, and the loan account would be on hold until October 2 (id. ¶ 6, Ex. A, transcript of June 4, 2018, telephone conversation at 9).

NSL reported the status of Minner's loans to CRAs in June, leading to Minner's objection on June 11, 2018 (Docket No. 73, Defs. Statement ¶ 33).  As of June 4, 2018, Minner's loans were overdue (id. ¶¶ 23, 32).  NSL investigated Minner's dispute and concluded that the credit report was accurate (id. ¶¶ 34-36).

Thus accepting Defendants' uncontested facts, Minner was delinquent when Defendants reported to CRAs in June 2018 before Defendants entered the forbearance arrangement.  Minner had not paid his loans for four months before entering the June 2018 forbearance.  This forbearance was an interim status while NSL awaited Minner's application for an IDR plan.  The forbearance temporarily postponed principal and interest payments during the forbearance period (see Docket No. 81, Pl. Aff. ¶ 3), running from June 4, 2018.  Defendants' credit report, however, reflected the delinquent

state of Minner's loan prior to that date.  Minner also has not introduced evidence of a CRA raising his credit report dispute.

This Court next considers the causes of action.

### D.  Plaintiff Abandoned His First and Second Causes of Action

"Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the arguments in any way," Taylor v. City of N.Y., 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003); Szarzynski v. Roche Labs., Inc., No. 07CV6008, 2010 WL 811445, at *15 (W.D.N.Y. Mar. 1, 2010) (Telesca, J.).  This Court has the discretion to deem a claim abandoned, Szarzynski, supra, 2010 WL 811445, at *15 (citing cases).

This Court concludes that Minner here abandoned his First Cause of Action under the New York General Business Law for steering debt relief to forbearance rather than to IDR.  Minner did not respond to defense arguments against these claims (Docket No. 82, Defs. Reply Memo. at 2-3), see, e.g., Johnson v. Kachelmeyer, No. 03CV356, 2006 WL 625837, at *1 (W.D.N.Y. Mar. 8, 2006) (Skrenty, J.) (when a party served a Rule 56 statement in support of its motion for summary judgment those facts are deemed admitted unless properly controverted by the nonmoving party).

Further, Defendants allege they advised Minner of IDR since 2013 but he only sought relief in the form of forbearance about five years later.  Minner's affidavit (Docket No. 81, Pl. Aff. ¶¶ 2-16) discusses the forbearance in 2018 and not what occurred five years earlier or his requests in 2014, 2015, 2016, and 2017 for relief, including forbearance or IDR (Docket No. 73, Defs. Statement ¶¶ 28-30).  Plaintiff does not contest Defendants' allegations about earlier advice and his own stated preference to

forbearance.   Furthermore,   the   last   forbearance   in   June   2018   was   imposed administratively anticipating Minner's application for IDR (Docket No. 81, Pl. Aff. ¶¶ 4-6). Therefore, deeming Defendants' allegations admitted, Minner has abandoned his First Cause of Action.

As for the Second Cause of Action for violation of the Fair Credit Reporting Act this Court finds that Minner also abandoned this claim (<u>see</u> Docket No. 82, Defs. Reply Memo. at 2 n.2).

Even if Minner pursues this claim, there is nothing in the record of any CRA sending notice to Defendants of a credit dispute, <u>see</u> <u>Arnold</u>, <u>supra</u>, 2018 WL 6671542, at *3, an element under § 1681s-2(b), <u>see</u> 15 U.S.C. § 1681i(a)(2), despite Minner's allegations.  Instead, Minner complained directly to Defendants about inaccuracies in his credit reports.  (Docket No. 73, Defs. Memo. at 11.)

Direct consumer objection to the accuracy of his or her credit report to the furnishing entity is not actionable under the Fair Credit Reporting Act.  Notice of the credit dispute under that Act must come from the third party CRA rather than directly from the borrowing consumer, <u>Randall v. Dish Network, LLC</u>, No. 217-cv-05428 (ADS) (GRB), 2018 WL 3235543, at *5 (E.D.N.Y. July 2, 2018); <u>Elmore v. North Fork Bancorporation, Inc.</u>, 325 F. Supp. 2d 336, 340 (S.D.N.Y. 2004) (<u>id.</u>).  As noted in <u>Elmore</u>, "if Congress had meant to create liability for violations once the furnisher had notice from any source of the existence of a dispute, it would have been a simple matter to say so," <u>Elmore</u>, <u>supra</u>, 325 F. Supp. 2d at 340, and the court was "not free to take a blue pencil to statues of the United States," <u>id.</u>, to have them apply otherwise.  Congress instead extended liability once a CRA noted a credit reporting dispute.  Further, § 1681s-2(a) lacks a private

right of action because the obligation in that provision is upon the furnisher of information to the CRA and not to the consumer.

Although Minner alleged that CRAs informed Defendants of Minner's credit report dispute (Docket No. 38, 3d Am. Compl. ¶ 164), there is no evidence of any CRA contact. Defendants track contact from CRAs with an Automated Credit Dispute Verification form but none arose from Minner and his complaints (Docket No. 73, Defs. Statement ¶ 36; Docket No. 73, Iorio Decl. ¶ 4).

Thus, Minner either abandoned the First and Second Causes of Action or they fail as a matter of law.  Upon either ground, this Court therefore grants Defendants' Motion for Summary Judgment (Docket No. 73).

> E.  Plaintiff Further Fails to Allege a Breach of Contract

Finally as to the Third Cause of Action, there is no breach of contract or breach of the implied duty of good faith stated here.  Even if Minner established Defendants' privity with DOE for there to be a contract between these parties, cf. Minner, supra, 2020 WL 906628, at *14 (Docket No. 13, Decision at 28), Minner has not shown that Defendants breached their duty.

Minner alleges two breaches, the steering to forbearance and inaccurately reporting default on the loan under forbearance.  From accepting Defendants' uncontested facts, Minner has not established steering to forbearance in 2018. Defendants offered IDR to Minner years before 2018 forbearance, with Minner declining relief or IDR (favoring forbearance instead and obtaining forbearance in 2018).  NSL placed Minner's loan in forbearance in June 2018 anticipating his IDR plan application.

Defendants also accurately reported Minner's status of delinquency prior to entering the forbearance.  When reported in late May to early June 2018, Minner was back on regular loan payments but did not pay.  This reporting predates the June 4 conversation between Minner and NSL's representative who explained that forbearance placed the loan on hold until October (see Docket No. 81, Pl. Aff. ¶ 6, Ex. A, Tr. at 9). Defendants offered Minner forbearance because of this delinquency (see Docket No. 73, Defs. Memo. at 6; Docket No. 73, Defs. Statement ¶ 23).

Thus, any contractual obligation and any implied obligation of good faith and fair dealing were met.  Defendants' Motion for Summary Judgment (Docket No. 73) dismissing the Third Cause of Action is granted.

## IV.   Conclusion

First, Minner did not offer counterstatement of facts and failed to proffer sufficient evidence to show a material issue of fact to preclude summary judgment.  Next, Minner abandoned his steering to forbearance claims and his Fair Credit Reporting Act claims alleged in the First and Second Causes of Action.  Alternatively, Minner was delinquent on his student loans and Defendants accurately reported this to credit reporting agencies, despite entering forbearance on those loans.  Furthermore, had Minner not abandoned this claim, without notice from a credit reporting agency of a dispute, there is no Fair Credit Reporting Act claim.

As for Minner's Third Cause of Action, there also is no breach of contract or breach of the implied duty of good faith and fair dealing because the information reported by Defendants to credit reporting agencies—that Minner was delinquent on his student loans—was accurate when given in May-June 2018.  NSL then placed Minner's loan on

administrative forbearance which had no effect on NSL's earlier credit reporting. Defendants' Motion for Summary Judgment (Docket No. 73) is granted.

### V.      Orders

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 73) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:       May 26, 2023
             Buffalo, New York


                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                      United States District Judge